Filed 4/18/23  P. v. Smith CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID THAYNE SMITH,<br><br>Defendant and Appellant. | B318663<br><br>(Los Angeles County<br>Super. Ct. No. LA012332-01) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles, Richard J. Kirschner, Judge.  Affirmed.

Seymour I. Amster, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy

Attorney General, Stefanie Yee, Deputy Attorney General, for Plaintiff and Respondent.

_____

David Thayne Smith and Daniel Miller were charged in 1993 with the special circumstance murder of Stefan Sweetzer. Smith was convicted of second degree murder following a trial at which the People introduced Smith's statement to a Los Angeles police detective that he had been at the murder scene with three other individuals, including Miller, when one of the men (whom Smith claimed he did not know) shot and killed Sweetzer. (See *People v. Smith* (Mar. 13, 1996, B084204) [nonpub. opn.].) Miller was convicted of first degree murder with a robbery-murder special-circumstance finding at a separate trial at which Miller testified it was Smith who shot and killed Sweetzer. (See *People v. Miller* (1994) 28 Cal.App.4th 522, 525.)

At the evidentiary hearing in February 2022 to determine whether to vacate Smith's conviction for murder pursuant to Penal Code section 1172.6, subdivision (d)(3) (former section 1170.95, subdivision (d)(3)),[1] Miller again testified that Smith was Sweetzer's actual killer. Based on that testimony and the record from Smith's 1993 trial, the superior court denied Smith's petition for resentencing, finding beyond a reasonable doubt that Smith was Sweetzer's actual killer or had aided and abetted the murder with an intent to kill. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Smith's Murder Conviction*

Smith and Miller were jointly charged in an information filed January 22, 1993 with the murder of Sweetzer (§ 187,

_____

[1]     Statutory references are to this code.

2

subd. (a)) with special-circumstance allegations the murder was committed for financial gain (§ 190.2, subd. (a)(1)), by lying in wait (§ 190.2, subd. (a)(15)), and while Smith and Miller were engaged in the commission of a robbery (§ 190.2, subd. (a)(17)). It was additionally alleged that in the commission of the offense a principal was armed with a firearm. (§ 12022, subd. (a)(1).)

Smith moved to sever his trial from Miller's based on Miller's post-arrest statement that directly implicated Smith in the murder. The motion to sever was granted.

The jury at Smith's initial trial was unable to reach a verdict, and a mistrial was declared.

According to the evidence at Smith's second trial, Sweetzer's body was discovered on Friday evening, October 16, 1992 at approximately 10:45 p.m. on a dirt road near a construction site in the Santa Monica Mountains. Shortly before the body was found, a white van had been seen entering the area and then speeding away. Responding Los Angeles police officers found five shell casings around and underneath, and a pager on, the body, but no wallet or other form of identification on the victim. It was determined that Sweetzer died from multiple gunshot wounds: He had been shot five times from behind in the head, neck and back.

On the following Monday morning, October 19, 1992, Smith called the pager found on Sweetzer's body. A series of discussions ensued between Smith and police officers during which Smith identified the victim and explained he and Sweetzer owned a business installing doors and window frames. According to Smith, he and Sweetzer had dinner together the preceding Friday, and Smith dropped Sweetzer off at his apartment around 9:00 p.m. Smith initially told officers he and Sweetzer used a

3

white van in their business to deliver doors and windows and indicated the van was Sweetzer's.

During his conversations with the officers, Smith's description of various matters changed. Los Angeles Police Detective Larry Dolley obtained vehicle registration and insurance information for a white van owned by Smith. Smith then said he let Sweetzer and Sweetzer's roommate use his van to transport computers, photocopy machines and other types of office equipment that Sweetzer and the roommate stole and kept in a storage unit until sold. When Sweetzer and his roommate split up, Sweetzer persuaded Smith to participate with him in the burglaries.

Ultimately Detective Dolley, accompanied by several other officers, went to Smith's residence and asked him to step outside to talk about the contradictions in the statements he had made. During that conversation Smith said, "I was at the murder scene, and Dan Smith was with me, Dan Miller was with me, four of us. There was a guy I didn't know who had the gun and Stefan had a gun. It was the guy that I don't know who shot him, and I don't know who he is." Smith was arrested.

During the subsequent investigation officers learned that Smith had rented a storage locker using a false name on October 18, 1992. Someone named Dan Halsey was also listed as an owner of the storage unit. On October 19, 1992 two men unloaded several items from a large white van and stored them in the unit. When officers accessed the unit they found stolen office equipment and a file cabinet containing Sweetzer's wallet and car keys. Sweetzer's truck was found parked in the condominium complex where Smith lived.

The jury convicted Smith of second degree murder and found the firearm allegation true. The court sentenced Smith to an aggregate state prison term of 16 years to life.[2] We affirmed the judgment on appeal, rejecting Smith's contentions the trial court erred in not excluding his statement that he was at the murder scene as the unlawful product of a custodial interrogation and there was insufficient evidence to support his conviction for second degree murder. (*People v. Smith, supra,* B084204.)

2. *Smith's Petition for Resentencing*

On October 23, 2020 Smith, representing himself, filed a petition for resentencing pursuant to former section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Smith checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted of murder under the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 effective January 1, 2019. The superior court appointed counsel to represent Smith.

Following the People's response stating they did not oppose issuance of an order to show cause because Smith could have been convicted under the natural and probable consequences

---

[2]    At his separate trial the jury convicted Miller of first degree murder and found true the felony-murder special-circumstance and firearm allegations. The financial gain and lying-in-wait special-circumstance allegations were found not true. Miller was sentenced to a state prison term of life without parole. (*People v. Miller, supra,* 28 Cal.App.4th at p. 524.)

doctrine, the court issued an order to show cause, setting the matter for an evidentiary hearing.

At the outset of the hearing on February 17, 2022, the court granted the People's request to take judicial notice of the record on Smith's direct appeal (one volume of the clerk's transcript, four volumes of the reporter's transcript and this court's unpublished March 13, 1996 opinion). Smith objected to the court's judicial notice of the summary of facts in the appellate opinion as hearsay, citing recent amendments to section 1172.6, subdivision (d)(3), which provided the admission of evidence at the hearing is to be governed by the Evidence Code and expressly provided the court could consider "the procedural history of the case recited in any prior appellate opinion." The court responded, "The court will take judicial notice of the appellate opinion including the recitation of the facts. . . . This court acts as an independent fact finder to determine whether the evidence establishes beyond a reasonable doubt that the petitioner would be guilty of murder under the amended . . . Penal Code section[s] 188 and 189 and thus ineligible for [re]sentencing. This court has reviewed the record fully, and this court does find that the recitation of the facts in the appellate opinion is an accurate recitation. And that comes from my reading of the transcripts."

The People then called Miller as a witness.[3] Miller testified he and Smith met in Seattle in 1992 and Smith invited him to

---

[3] Miller originally declined to answer any questions. After ruling Miller had no Fifth Amendment privilege to refuse to testify, the court ordered him to answer the People's questions. When he again declined, the court found him in contempt of court and remanded him to custody. Several days later Miller agreed to testify.

6

come to work at Smith and Sweetzer's door and window installation company in Burbank. Miller worked with the two men for about three weeks before Sweetzer's murder. During that time Miller learned that Smith and Sweetzer stole tools, doors and window frames from construction sites for use in their business and also stole computers and other office equipment from commercial business parks, which they resold. Smith's large white truck was used to transport the stolen goods, which were stored in a warehouse behind the business's storefront before being used or resold. Miller participated in these thefts on a number of occasions. Miller was aware that Smith kept a pistol in a locked metal briefcase that he carried with him at all times.

Miller described the relationship between Smith and Sweetzer as "tenuous" because Smith suspected Sweetzer was selling some of the stolen items without giving Smith his share of the proceeds. The week before the murder, when Miller was at Sweetzer's apartment, Sweetzer sold a computer for $1,600. Smith became very upset when Miller reported this incident to him, complaining that he was being "ripped off."

On the night of the murder Smith told Miller they were going to have dinner with Sweetzer to discuss things with him and then go to a construction site where they might have a job installing door frames. After dinner at Sweetzer's apartment Smith suggested visiting the construction site. After Smith drove the men to the site in his truck, Smith told Miller to watch their equipment while he spoke to Sweetzer. According to Miller, "They went walking up that gravel path. And I was just standing there waiting. Next thing I know I hear a pop. And then it was followed by three or four more pops."

Miller testified the "pops" sounded like gunshots. When he looked around, Miller saw Sweetzer on the ground and Smith holding a gun. Smith called for Miller to help him by going through Sweetzer's pockets. Miller found a set of keys that he gave to Smith.

Smith and Miller then left the murder scene, with Smith driving fast according to Miller. They went directly to Sweetzer's apartment, which they entered using the keys Miller had taken from Sweetzer's body. Inside the apartment Smith looked for the money he believed Sweetzer had been withholding from him. Smith found the $1,600 from the computer sale and told Miller he believed a key on Sweetzer's keychain was to a post office box where additional funds had been stored. The two men spent the night at Sweetzer's apartment because Smith, promising to pay Miller for his assistance, wanted help the next day moving stolen goods stored in the business's warehouse to a storage unit in Orange County.

The following day Smith and Miller rented a storage unit in Huntington Beach using false names, loaded stolen equipment, as well as Sweetzer's filing cabinet, into Smith's truck and moved it all into the storage unit.

Miller also testified that, after Smith called Sweetzer's pager and was asked to come to the police station, Smith told Miller that in any discussion with law enforcement Miller should say there was a third person with them at the construction site named Richard, an associate of Sweetzer's, who was the person that shot Sweetzer.

Miller was at Smith's house when Detective Dolley questioned and then arrested Smith. Miller was also arrested at that time and told the officers, as Smith had directed, that

Richard had shot Sweetzer. Miller subsequently told the police that Smith was the shooter.

On cross-examination Miller acknowledged he had filed his own petition for resentencing and knew if he was the actual killer he would not be entitled to resentencing relief. Miller admitted he had prior felony convictions for drug trafficking and had carried a firearm when committing those offenses. Miller also admitted he tried to flee when the police came to Smith's home. Miller was not unduly concerned about spending the night at Sweetzer's apartment with someone who had just committed murder because Smith had discarded the gun before they went to the apartment and Smith had no motive to try to kill him.

After Miller's testimony the court admitted into evidence both Miller's post-arrest statement and the testimony from his trial in which he identified Smith as the individual who shot Sweetzer. Then, following argument by counsel, the court briefly summarized the evidence, stated Miller was "very credible" and found beyond a reasonable doubt that Smith was the actual killer and ineligible for resentencing. The court further found beyond a reasonable doubt, if Smith was not the actual killer, he aided and abetted the murder with the intent to kill. In addition, the court explained it had done an analysis under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 and that, based on those cases, it found Smith was a major participant (presumably in the robbery of Sweetzer) who acted with reckless disregard for human life.

Smith filed a timely notice of appeal.

## DISCUSSION

1. *Accomplice Liability for Murder and Section 1172.6*

Under the ameliorative changes to the law relating to accomplice liability for murder effected by Senate Bill No. 1437 (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder except under the narrowed felony-murder rule set forth in section 189, subdivision (e), and may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843).  The amended felony-murder provision requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).  (See *People v. Strong* (2022) 13 Cal.5th 698, 708.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of these

changes to the law relating to accomplice liability for murder.[4]  If the petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subd. (d)(1).)

At that hearing to determine whether the petitioner is entitled to relief, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.  The petitioner and the prosecutor may also offer new or additional evidence.  (*Ibid.*)  The superior court's decision to deny the petition after an evidentiary hearing, if the proper standard and burden of proof were applied, is reviewed for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113.)

      2.  *Substantial Evidence Supports the Superior Court's Finding That Smith Was the Actual Killer and Ineligible for Resentencing Relief*

Miller's testimony that Smith employed a ruse to drive Sweetzer to an isolated area and then shot and killed him

---

[4]     Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) extended these modifications to attempted murder and voluntary manslaughter.

because Sweetzer had failed to fairly share the proceeds of their joint criminal enterprise, if properly admitted and considered by the superior court, constituted substantial evidence to support the court's finding that Smith was Sweetzer's actual killer. (See, e.g., *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"]; *People v. Jones* (2013) 57 Cal.4th 899, 963 [same].) Smith challenges the superior court's reliance on Miller's testimony, arguing there was no evidence corroborating the testimony of Miller, an accomplice to the crime, tending to connect Smith to the murder and, in any event, Miller was not a credible witness. Smith also contends the superior court improperly took judicial notice of the factual summary in this court's opinion affirming his conviction on direct appeal, requiring a reversal and a new evidentiary hearing. None of these arguments has merit.

      a. *Miller's testimony was sufficiently corroborated*

"Section 1111 provides in part: 'A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.' The requirement that accomplice testimony be corroborated is an "'exception[]" to the substantial evidence' rule. [Citation.] It is based on the Legislature's determination that "'because of the reliability questions posed by'" accomplice testimony, such testimony "'by itself is insufficient as a matter of law to support a conviction."'. . . [¶] Thus, for the jury to rely on an accomplice's testimony about the

12

circumstances of an offense, it must find evidence that, "'without aid from the accomplice's testimony, tend[s] to connect the defendant with the crime.'" [Citations.] 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into consideration by the trier of fact in determining the sufficiency of the corroboration.' [Citations.] The evidence 'need not independently establish the identity of the victim's assailant' [citation], nor corroborate every fact to which the accomplice testifies [citation] and "'may be circumstantial or slight and entitled to little consideration when standing alone.'"'" (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32.)

As Smith argues, and the People concede, Miller was unquestionably Smith's accomplice; and his testimony, therefore, required corroboration—evidence reasonably tending to connect Smith to the commission of the murder. The evidence before the superior court from Smith's trial, where Miller did not testify, did just that. As discussed, Smith admitted to Detective Dolley he was present at the murder scene. And the record from Smith's trial established that Smith's van was used in the murder; Smith, using a false name,[5] rented a storage unit three days after the murder where he moved thousands of items of stolen property from the warehouse at the business he owned jointly with Sweetzer, as well as items of Sweetzer's personal property; and

---

[5]    As the superior court pointed out when reviewing the evidence before denying Smith's petition for resentencing, the fictitious name he used was "David Thayne," his first and middle names, and the combination to the lock was the date Smith graduated from high school:  "Not particularly clever, but nevertheless what in fact happened and was established by the evidence."

13

Sweetzer's car was found parked near Smith's condominium complex. The People amply satisfied the corroboration requirement of section 1111. (See *People v. Brown* (2003) 31 Cal.4th 518, 556 ["[c]orroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense," internal quotation marks omitted].)

  b. *The superior court properly assessed Miller's credibility*

Smith's counsel did his best to undermine Miller's credibility, pointing out his prior criminal record and ownership of a firearm, his attempt to escape when officers came to question and then arrest Smith, and his motive to lie to enhance the possibility of success on his own section 1172.6 petition for resentencing. Those facts, whether considered separately or in combination, did not make Miller's testimony—and, in particular, his assertion it was Smith who shot Sweetzer—inherently improbable, even if they do raise questions about Miller's description of his own role in the events.[6] Accordingly, the

---

[6] Smith's argument that the jury at Miller's trial rejected his testimony identifying Smith as the actual killer is misplaced. Miller's jury found not true the two special-circumstance allegations—financial gain (§ 190.2, subd. (a)(1)) and lying in wait (§ 190.2, subd. (a)(15))—that required the jury to find Miller was the actual killer or an accomplice acting with intent to kill (see § 190.2, subd. (c)), and necessarily found him guilty of special-circumstance murder as a major participant in the robbery of Sweetzer who acted with reckless indifference to human life (see § 190.2, subd. (d)), suggesting it believed Smith was the actual killer but that Miller did not innocently wait by the van while Smith shot Sweetzer.

14

question whether to believe the witness was for the superior court as the finder of fact, not for us as the reviewing court. (See, e.g., *People v. Thomas* (2023) 14 Cal.5th 327, 378 ["'[a] reviewing court neither reweighs [the] evidence nor reevaluates a witness's credibility'"]; *People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [same].)

c. *Judicial notice of the factual summary from our opinion on direct appeal was not prejudicial error*

Section 1172.6, subdivision (d)(3), as amended effective January 1, 2022, provides at the evidentiary hearing to determine whether the petitioner is entitled to relief, the court "may also consider the procedural history of the case recited in any prior appellate opinion." Cases interpreting that language have reasoned it precludes the superior court from considering a prior appellate opinion's statement of facts at the evidentiary hearing. (See, e.g., *People v. Clements* (2022) 75 Cal.App.5th 276, 292 [the "specificity" of the language in subdivision (d)(3) "indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing"]; see also *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9 [the 2022 amendment to subdivision (d)(3) "prevents a trial court from relying on facts recited in an appellate opinion to rule on a petition under section [1172.6]"].)

---

Similarly misplaced is Smith's suggestion that Miller would not have agreed to spend the night at Sweetzer's apartment with Smith if Smith had just murdered Sweetzer. Both men agreed to spend the night together following the murder, indicating, for whatever reason, neither feared the other.

Without conceding the factual summary from an opinion deciding a petitioner's direct appeal is inadmissible at a section 1172.6, subdivision (d)(3), evidentiary hearing, the Attorney General argues taking judicial notice of that summary here did not constitute prejudicial error.  (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [reversal is not required for evidentiary error at a hearing pursuant to section 1172.6, subdivision (d)(3), unless it is reasonably probable petitioner would have obtained a more favorable outcome had the evidence been excluded]; see generally *People v. Epps* (2001) 25 Cal.4th 19, 29 ["the *Watson* test for harmless error applies" to the denial of a right that "is purely a creature of state statutory law"].)  We agree.

Although the superior court took judicial notice of the factual summary from *People v. Smith*, *supra*, B08204, nothing in the record supports Smith's claim on appeal (made without citation to the record) that the court "stated it was considering the facts in the appellate opinion."  To the contrary, in overruling Smith's objection, the court explained it understood its role as independent fact finder was to determine whether the evidence established beyond a reasonable doubt that Smith would be guilty of murder under amended sections 188 and 189 and emphasized it had read the transcripts of the trial to make that determination.  The further statement that the factual recitation in the appellate opinion was accurate does not indicate the court relied on our opinion rather than the testimony in the underlying transcripts to find Smith was guilty of murder under current law.  (See *People v. Clements*, *supra*, 75 Cal.App.5th at pp. 292-293 [it is petitioner's burden on appeal to identify any portion of the appellate opinion the superior court relied on, rather than

16

information in the trial transcripts submitted for the court's decision].)

In addition, Smith does not dispute the superior court's assessment that the factual recitation in the appellate opinion was accurate, nor does he identify any information in that opinion that was not also contained in the trial transcripts. Accordingly, even if inadmissible, because the statement of facts was merely cumulative of properly admitted evidence, any consideration of it by the trial court was necessarily harmless. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1016 [because evidence challenged as inadmissible hearsay was cumulative, any error in its admission was harmless beyond a reasonable doubt]; *People v. Allen* (1986) 42 Cal.3d 1222, 1257-1258 [any error in admission of photographs cumulative to other evidence that was detailed and essentially uncontested was harmless]; see also *People v. Burney* (2009) 47 Cal.4th 203, 232.)

## DISPOSITION

The postjudgment order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

17